UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

Plaintiff,

v.

Tyler J. Davis,

Defendant.

Case No. 3:26-cr-182

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Defendant Tyler J. Davis is charged with one count of threatening communications in violation of 18 U.S.C. § 875(c), arising from allegations of conduct including threats against various Veteran's Affairs employees by way of recorded telephone conversations, voicemail messages, and online submission to the VA. After conducting a detention hearing and hearing the arguments of counsel, my colleague Magistrate Judge Darrell A. Clay ordered Mr. Davis detained, concluding that the offense charge was a qualifying crime of violence pursuant to 18 U.SC. § 2332b(g)(5)(B) for which the maximum term of imprisonment is ten years or more, and further determined by clear and convincing evidence that there is no condition or combination of conditions of release which will reasonably assure the safety of any other person and the community. (Doc. No. 9).

Before me are two motions of the Defendant requesting relief from his detention. The first is Mr. Davis's timely-filed motion for revocation of his detention order and for his release on bond. (Doc. No. 11). The second motion is a request for furlough so that Mr. Davis might be present for the birth of his expected child, currently anticipated around October 23. (Doc. No. 18). The

government has opposed this latest motion in writing. (Doc. No. 19). I will address each of these motions in turn.

**A. Motion to Revoke Detention Order**

I have considered the record concerning Mr. Davis's detention, including the transcripts of the detention hearing, which was conducted in two phases, and the arguments of counsel. (Doc. Nos. 13 & 14). My review of Judge Clay's detention decision is de novo.

Here, a rebuttal presumption of detention arises as the offense is an offense of violence as defined under 18 U.SC. § 2332b(g)(5)(B), due to allegations of threatening communications in violation of 18 U.S.C. § 875(c). Accordingly, the Defendant must present proposed conditions of release to address any concerns about the safety of any other person and the community, and that he is not a risk of flight. Judge Clay did not address the risk of flight specifically. Instead, his focus was on the "safety" component of the Bail Reform Act.

Defendant has proposed the following relevant conditions of release, some of which are standard for release of all defendants:

1. Home detention with electronic monitoring;
2. Continued mental health treatment and compliance with all recommendations of providers;
3. No possession of firearms or dangerous weapons;
4. Regular reporting to pretrial services;
5. Third-party custodianship by his wife; and
6. No contact with alleged victims or witnesses except through counsel.

In further support of his release, Defendant observes:

1. He has no history of failing to appear for court proceedings;
2. Minimal prior criminal history;

3. Prior military service and honorable discharge;
4. Ongoing mental health treatment to address issues associated with his alleged conduct; and
5. His wife's pregnancy with willingness to serve as a custodian.

At the outset, I applaud Defendant's counsel for marshalling arguments in support of his release. Indeed, many of the conditions and observations do indeed address potential concerns and my decision making concerning his release.

But I am deeply troubled by the scope and depth of the alleged threats in this case. If proven, the government's expressed concerns about release are supported by a deluge of threats directed at the VA and VA staff. This is not a case where there was a single exchange or incident in which the defendant may have momentarily lost his cool and made inappropriate statements in the anger of the moment.

Instead, the record here supports repeated threats of violence – and not veiled threats – in a variety of contexts and by a variety of means. And his threats were not just directed to VA staff in apparent frustration. He also repeated threats to fellow veterans at social gatherings. While some of this conduct may constitute the hyperbole expected when gathered with otherwise like-minded individuals, it demonstrates the threats were pervasive and repeated, and included vivid threats of gun violence.

The potential means of Mr. Davis's threats was not theoretical, as the search of his residence revealed seven firearms of various styles, including shotguns and potentially easy to conceal handguns. Mr. Davis's military training certainly included developing skills in the use of such firearms, including sharpshooter training.

Mr. Davis also offers the anticipated birth of his child as a reason supporting his release. While it is understandable that he would wish to be present for such a major and joyous life event,

the birth of his child will not necessary make his conditions of home detention more helpful. First, his wife is also his proposed custodian. While she may well wish to serve a custodial function, she'll have her hands full – both literally and figuratively – upon the birth of their child. Second, there will be new stresses interjected attendant to the arrival of a newborn, as in any family, including sleeplessness, distraction, and potential frustration and aggravation. Release would mean that while his wife would be taking on the added duties of mother and caregiver, she would also be the Defendant's custodian.

While there are admirable characteristics in Mr. Davis's background, there are also a number of concerns surrounding his alleged conduct which cannot be alleviated by his proposed conditions. I have serious concerns about nature of the threats alleged here, and the surrounding circumstances.

Accordingly, I find by clear and convincing evidence that no combination of conditions will reasonably assure the safety of any other person and the community. The Defendant's request for revocation of his detention order and for release on bond, (Doc. No. 11), is denied.

**B. Motion for Furlough**

Subsequent to the filing of his motion for revocation of the order of the magistrate judge, Mr. Davis requested furlough so that he might attend the birth of his expected child.

As I noted above, his request is certainly understandable, and compelling, as any interested father would wish to be present at such an important moment for his child, his wife and mother of their child, and the formal commencement of his role as father. But reluctantly, I cannot grant his request.

First, as observed by the government, such a furlough would involve transport and supervision to the hospital for birth of his expected child. But a "due date" of October 23 does not provide the type of certainty required for execution of a furlough request. The child could come

before or after that date, with little or no warning. Logistically, execution of the request would be challenging, if not impossible.

Second, even if I were inclined to issue such a broad and vague order, the U.S. Marshals Service is understaffed. Our regional court simply doesn't have the resources to follow through with such a request, even if we had certainty about the timing of the birth.

Third, if I granted release that was *not* under the direct supervision of the U.S. Marshals Service, I would have the same concerns expressed above concerning the granting of release, particularly given that Mr. Davis's proposed custodian will be the woman giving birth to their expected child.

In all of our lives, there are significant moments we wouldn't trade for anything, both joyous and tragic. It is not lost on me that this would be one of those moments for Mr. Davis. With a heavy heart, I must deny his request for furlough for the reasons stated. (Doc. No. 18).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge